**MINERS SAV. BANK OF PITTSTON, PA., et al. v. UNITED STATES et al.**

Civ. A. No. 2395.

United States District Court
Middle D. Pennsylvania.

Feb. 20, 1953.

Albert H. Aston, Wilkes-Barre, John T. Mulhall and M. J. Mulhall, Pittston, Pa., for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Benjamin H. Pester, Sp. Assts. to Atty. Gen., Arthur A. Maguire, U. S. Atty. and Joseph P. Brennan, Asst. U. S. Atty., Scranton, Pa., for U. S.

Leo W. White, Wilkes-Barre, Pa., Charles A. Shea, Jr., Wilkes-Barre, Pa., for additional defendants.

MURPHY, District Judge.

This is an action to quiet title to a property against which the United States has a recorded income tax lien.[1] Act of 1931, as amended, 28 U.S.C.A. (1940 ed.) §§ 901–906, now 28 U.S.C.A. § 2410 (a–d). The government challenges plaintiffs' right and by counterclaim seeks to foreclose its own lien. Internal Revenue Code, 26 U.S.C.A. §§ 3678, 3744 [now 28 U.S.C.A. § 1396], 3800, and the Act of 1931.

The problem arose in this fashion: Plaintiff bank in 1921 loaned John and Thomas Kehoe[2] $30,500, receiving a one year note, a mortgage forthwith duly recorded and an accompanying bond as collateral security. The debt being reduced by payments the note in 1935 was surrendered[3] and replaced by a demand note for $28,700 with 5000 bonds E. Prussian 6/53, 100 sh. Pelzer Mfg. Co. v. t. c., as additional security.

The Collector of Internal Revenue in 1936 duly recorded in Luzerne County a lien for $442,186.57 income taxes against John Kehoe.

Under warrant of attorney in the bond accompanying the mortgage the bank on January 26, 1943, entered judgment of record for $30,500 against the mortgagors. Next day for a consideration the bank in writing agreed with Thomas Kehoe to limit the lien and collection of the mortgage, accompanying bond, judgment thereon, and the debt represented thereby to the property in question, and otherwise to release John and Thomas Kehoe from any further liability thereunder,[4] and surrendered[5] the demand note to Thomas Kehoe's counsel.

Meanwhile the government filed suit on its tax claim in the United States District Court and an exemplified copy of a judgment for $549,983 obtained thereon was on March 11, 1943, duly recorded in Luzerne County. From other property of the taxpayer $9,000 was collected thereon; the balance remains due and unpaid.

In 1945 the bank filed an affidavit of default for $22,704.22, obtained judgment and foreclosed on the mortgage in state court proceedings. It did not make the government a party or give it any particular notice thereof.[6]

At the sheriff's sale[7] the bank, as the highest and best bidder, purchased the property for $61.10. The deed was duly acknowledged, delivered and recorded and the bank took possession.

The bank placed the property on the open market and entered into an agreement of sale with Monk for $9,500 payable in installments. Monk took possession.

■ As legal title holder and vendee in possession, respectively, plaintiffs contend

1. The parties reside and the property is located in Luzerne County in this district.

2. Brothers and owners as tenants in common of an undivided one-half interest in the property in question.

3. The usual banking practice was to enter payments on the note—no other proof was kept—; to surrender the old note and execute a new note for the balance due.

4. Similarly as to a $70,000 mortgage and bond of Thomas Kehoe, John Kehoe and Sarah Kehoe, his wife, covering a Wilkes-Barre property. An attachment execution thereon against Thomas Kehoe and the Scranton Lackawanna Trust Company, garnishee, was discontinued.

5. Four notes were involved; on two notes the collateral was liquidated and the notes paid in full; the other two, including the note in question, were surrendered to the obligor but the collateral was retained.

6. The Commissioner of Internal Revenue refused to release the government's lien. The bank, in the state court naming the government as defendant, sought a declaratory judgment as to the status of the respective liens. A motion to dismiss was pending during the foreclosure proceedings.

7. The sale was advertised by the sheriff in the Vigilant at Hazleton, the Mountain Echo at Schickshinny, and the Luzerne Legal Register, the latter the official county legal publication. The other publications, described as periodicals, of general circulation, seldom if ever come to the attention of Pittston residents. The precise location of the property as to block or corner was not given.

the mortgage was a prior lien,[8] the value of the property was less than the amount due on the debt,[9] and that the bank took title free and discharged of the tax liens and, if not, that they are apparent liens only constituting a cloud upon title affecting its marketability. In the latter event they ask us to decree that by virtue of the present proceedings the tax liens are divested and discharged, and directing that the records in the state court be marked accordingly.[10]

We consider first the government's claim to affirmative relief. They contend the debt was fully paid before entry of the default judgment; that the mortgage and lien thereof were thereby discharged and could not be kept alive against a subsequent tax lien; there being nothing for the bank to foreclose title did not pass from Kehoe. They therefore seek to foreclose their lien, to sell the taxpayer's interest in the property and to have the proceeds, after payment of the costs, applied to the reduction of their indebtedness.[11]

To show prior payment they point (a) to the surrender of the original note and its replacement by a demand note in a lesser amount; (b) to the 1943 agreement, surrender of the note, and the remarks at the hearing hereon of the witness Battisti, Mr. Aston, counsel for the bank, and Mr. White, counsel for Thomas Kehoe.[12]

As to (a), they argue the debt was then paid in full; a new debt incur-

8. "First in time, first in right." 26 U. S.C.A. § 3672(b); United States v. Beaver Run Coal Co., 3 Cir., 1938, 99 F.2d 610; United States v. Sampsell, 9 Cir., 1946, 153 F.2d 731 at page 736; Littlestown Nat. Bank v. Penn Tile Works Co., 352 Pa. 238, 42 A.2d 606, 608; In re Meyer's Estate, 159 Pa. Super. 296 at page 301, 48 A.2d 210.

9. The uncontradicted evidence was that $9,500 represented the fair market value and the best price obtainable at the time of the sale to Monk, and that because of improvements and major repairs made by Monk and a general increase in realty values the interest in question was worth at the time of the hearing herein $16,000.

10. The bank discontinued the pending action and commenced anew in the state court. Judgment was erroneously granted for want of an appearance and affidavit of defense. See 28 U.S.C.A. (1940 ed.) § 902, now 28 U.S.C.A. § 2410(b). Upon petition of the government the case was removed to the United States District Court; see § 29, Jud. Code, 28 U.S.C. § 72 (1940), now 28 U. S.C.A. §§ 1446, 1447; 28 U.S.C.A. (1940 ed.) § 903, now 28 U.S.C.A. § 1444; and the judgment set aside.
Lack of jurisdiction of the subject matter was not raised, but see Wells v. Long, 9 Cir., 1947, 162 F.2d 842; Haldeman v. United States, D.C.Mich.1950, 93 F.Supp. 889. The action lacked diversity or other basis for federal jurisdiction. See and cf. Jud.Code, § 24(1), 28 U.S.C.A. (1940 ed.) § 41(1), now 28 U.S.C. A. § 1345. As to remand, see 28 U.S. C.A. §§ 71, 80 (1940), now 28 U.S.C.A.

§ 1447(c). By amendment Monk was added as party plaintiff. In the counterclaim John and Thomas Kehoe were named as additional party defendants. In view of the government's counterclaim, the question of lack of jurisdiction has become moot. See American Fire & Cas. Co. v. Finn, 341 U.S. 6 at pages 16–18, 71 S.Ct. 534, 95 L.Ed. 702, 19 A.L.R.2d 738.

11. See "Federal Tax Liens and Their Enforcement", Samuel O. Clark, Jr., 33 Va. L.Rev., No. 1, January 1947, 13 at p. 31 et seq.

12. Explaining inability to produce the demand note, Mr. Battisti (p. 50): "* * * there was an adjustment of debt here." Mr. Aston: "There has been a settlement with the family of Mr. Kehoe. * * * The note has been turned over to the person who made the settlement." P. 51, Mr. Aston: "The bank has taken the position that this is a business transaction and we have collected our money as far as we are concerned. * * * We will produce it (the note) along with the date and terms of settlement and with whom it was made." (P. 74) "* * * We have a judgment * * * which is not subject to a collateral attack." (P. 80), Mr. White: "This is the note that was delivered to me at the time the matter was closed." (Pp. 80–81), Mr. Battisti: "This is a mortgage note. * * * There was a settlement of all of Thomas Kehoe's obligations with the bank * * *" (P. 85), "* * * we have a written agreement * * * for the settlement."

red, and a previously executed mortgage given as security for future indebtedness without the same being noted on the mortgage.[13] There is no evidence to support such a theory or justify such an inference. All of the evidence is to the contrary.

"* * * A change of securities does not necessarily work an extinguishment of the debt, * * * extinguishment or satisfaction depends upon the agreement and intention of the parties * * *." Fleming v. Parry, 24 Pa. 47 at page 51. "* * If a note secured by a mortgage be renewed or otherwise changed, the lien continues until the debt is paid." See Appeal of Kimberly, 7 A. 75, at page 79, 3 Sadler, Pa., 528; Cover v. Black, 1 Pa. 493; Jones v. Guaranty & Indemnity Co., 101 U. S. 622, at page 630, 25 L.Ed. 1030. "A promissory note given for an antecedent debt does not discharge it, unless given and received in absolute payment." Appeal of Kimberly, Id., supra, 7 A. at page 75, footnote 2.

Alternatively they argue that the circumstances shown in (b) indicate the debt was then actually paid but the mortgage, accompanying bond and judgment thereon were left open to defeat the government's claim.

■■ Ordinarily one cannot collaterally attack a judgment; Hoff v. Allegheny County, 343 Pa. 569 at page 572, 23 A.2d 338; Moeller v. Washington County, 352 Pa. 640 at page 644, 44 A.2d 252; Boulton v. Starck, 369 Pa. 45 at page 47, 85 A.2d 17; it is presumed to be valid and regular. Johnson v. Zerbst, 304 U.S. 458 at page 468, 58 S.Ct. 1019, 82 L.Ed. 1461. The government however pleads an exception to the rule [14] by claiming fraud and collusion between the mortgagor and the mortgagee to defeat the government's claim. See and cf. In re Metzger's Estate, 242 Pa. 69 at page 79, 88 A. 915; Hartman v. Ogborn, 54 Pa. 120 at page 122; Meckley's

Appeal, 102 Pa. 536; Appeal of Dietrich, 107 Pa. 174; Biddle v. Tomlinson, 115 Pa. 299 at page 304; McNaughton's Appeal, 101 Pa. 550 at page 555; Fisher v. O'Donnell, 153 Pa. 619, 26 A. 293. As to payment per se, see Bower v. Casanave, D.C., 44 F.Supp. 501 at page 505; Dauberman v. Hain, 196 Pa. 435, 46 A. 442; Nace v. Hollenback, 1 Serg. & R. 540 at page 545.

■ The burden is on the party attacking a judgment to establish its invalidity. Com. ex rel. v. Reading, 336 Pa. 165 at page 170, 6 A.2d 776. Fraud is never presumed; he who avers it has the burden of proving it. Budd v. Com. of Internal Revenue, 3 Cir., 1930, 43 F.2d 509 at page 512. It must be established by clear and convincing proof; Morrison v. Heller, 3 Cir., 1950, 183 F.2d 38. See Finberg v. Burkhardt, 239 Pa. 519 at page 524, 86 A. 1062, 1064, "* * * by evidence that is clear, precise, and indubitable"; cf. Cloud v. Markle, 186 Pa. 614, 40 A. 811, and see Fox v. Queens County Sales Co. Inc., D.C.E.D.N.Y.1931, 52 F.2d 794. It may be concluded from circumstantial evidence. Chorost v. Grand Rapids Factory Show Rooms Inc., 3 Cir., 1949, 172 F.2d 327 at page 329, and see Connolly v. Gishwiller, 7 Cir., 1947, 162 F.2d 428, at page 433.

■ The government seeks to make an exception to the foregoing by analogy with Nevil v. Heinke, 22 Pa.Super. 614. Under a Pennsylvania statute, 12 P.S. § 309, a terre tenant is a necessary party in a mortgage foreclosure proceeding. If not made a party he is not affected by the judgment and may later raise whatever objections and defenses he could have raised if served. See 13 Pa.Standard Practice, p. 624. The government argues that having consented to be made a party to state mortgage foreclosure proceedings [15] they should not be deprived of any

13. As to the latter, citing Weir v. Potter T. & M. G. Co., 323 Pa. 212 at page 220, 185 A. 630.

14. Albeit not precisely; cf. Johnson's Appeal, 9 Pa. 416 at page 425; Lewis v. Nenzel, 38 Pa. 222 at page 225; Kepler v. Kepler, 330 Pa. 441 at page 445, 199 A. 198.

15. But cf. Douglas Properties v. Stix, 1936, 118 Fla. 354, 159 So. 1, 105 A.L. R. at page 1260; Ormsbee v. United States, D.C., 23 F.2d 926; Minnesota Mutual Life Ins. Co. v. United States, 5 Cir., 47 F.2d 942 at page 944.

rights by plaintiffs' failure to do so.[16] But in sci. fa. proceedings the burden of proving payment is upon the one averring it. Brownell v. Oviatt, 215 Pa. 514, 64 A. 670; Coursin v. Shrader, 146 Pa. 475, 23 A. 801, and see Porter v. Levering, 330 Pa. 392 at page 396, 199 A. 482. The burden is therefore upon the government.

The uncontradicted evidence is that when the agreement was executed John Kehoe's indebtedness to the bank was then $64,910, of which $23,235 represented the balance due on the note in question. The testimony was that the balance due on the note was not realized by the bank, even considering the money realized from the sale to Monk, and that a portion thereof had to be ultimately charged off.

Is there any principle of law warranting an inference of payment? A creditor may hold several securities for the same debt. Baum v. Tonkin, 110 Pa. 569 at page 573, 1 A. 535. He may relinquish his collateral security altogether without the consent of other creditors. Jennings v. Loeffler, 184 Pa. 318 at page 325, 39 A. 214. He may pursue his remedy on all or one with but one satisfaction. Schuylkill Trust Co. v. Sobolewski, 325 Pa. 422, 190 A. 919, and see Evans v. Provident Trust Co., 319 Pa. 50 at page 52, 179 A. 452, and cases cited; Stofflett v. Kress, 342 Pa. 332 at page 335, 21 A.2d 31. If the debt was paid the mortgage and the lien thereof were exhausted and could not be kept alive as against the subsequent tax

---

16. Based upon the same premise they seek to set aside the sheriff's sale, alleging use of an improper advertising medium, insufficient description and inadequacy of price. As to the medium, there was compliance with the letter but not the spirit of the law. See Markle Banking & Trust Co. v. Silverman, 30 Luzerne, Pa. Legal Register Rep. 353 at 355; Metropolitan Life Ins. Co. v. Broomall, 30 Delaware Co. Rep., Pa., 599 at 600; 45 P.S. §§ 39, 81, 83, 84; 7 Pa. Standard Practice, p. 351. As to the other grounds, see Id. pp. 353, 359, 372-373; 45 P.S. §§ 81, 83. The errors, if any, were merely procedural irregularities. Foley v. Smy, 352 Pa. 292 at page 296, 42 A.2d 453; Gross v. Simsack, 364 Pa. 337 at page 341, 72 A.2d 103; 13 Pa. Standard Practice, p. 692; 12 P.S. §§ 2447, 2511; Keystone Collieries v. Mudge, 256 Pa. 130, 100 A. 526, 1 A.L.R. 1428; Knox v. Noggle, 328 Pa. 302, 304, 305, 196 A. 18; Peoples-Pittsburgh Trust Co. v. Blickle, 330 Pa. 398, 199 A. 213; McLanahan v. Goodman, 265 Pa. 43 at page 49, 108 A. 206; Trachtenberg v. Glen Alden Coal Co., 354 Pa. 521 at page 530, 47 A.2d 820, 172 A.L.R. 647; American State Bank & Trust Co. v. Mariades, 328 Pa. 428 at page 430, 196 A. 71. The government does not offer to bid sufficient to pay the mortgage, nor state that anyone was misled by the description. See Lyle v. Armstrong, 235 Pa. 224 and 226, 83 A. 577; In re Bowen, D.C., 58 F.Supp. 286 at page 297, affirmed, 3 Cir., 151 F.2d 690.

We see no relevancy in the government's reference to the Pennsylvania De-

ficiency Judgments Act, as amended, 12 P.S.Pa. §§ 2621.1-2621.11. After the sheriff's sale the mortgage lien ceased to exist; the mortgagor-mortgagee relationship terminated. Miners Nat'l Bank of Pottsville v. Frackville Sewerage Co., 157 Pa.Super. 167 at page 173, 42 A.2d 177; Pennsylvania Company v. Emmons, 338 Pa. 513 at page 518, 13 A.2d 417. The bank agreed to restrict its claim to the property and herein seeks no additional amount. Sophia Wilkes B. & L. Ass'n v. Rudloff, 348 Pa. 477 at page 479, 35 A.2d 278. See Id., 348 Pa. at p. 481, 35 A.2d at page 280; " * * * the judgment * * * has been discharged as completely and effectually as if it had been actually paid off in cash." In re McGrath's Estate, 159 Pa.Super. 78, 46 A.2d 735; Hoffman Lumber Co. v. Mitchell, 170 Pa.Super. 326, 85 A.2d 664 at page 666. The intention of the Deficiency Judgments Act was to protect judgment debtors. Union Trust Co. v. Tutino, 353 Pa. 145 at page 148, 44 A.2d 556, and see Bank of America Nat'l Trust & Savings Ass'n v. United States, D.C.Cal.1949, 84 F.Supp. 387 at page 388. Petitioning the court to fix the fair market value of the property is required only when a creditor seeks to collect the balance due on the judgment. Ochiuto v. Prudential Ins. Co. of America, 356 Pa. 382 at page 385, 52 A.2d 228, and see Auerbach v. Corn Exchange Nat'l Bank & Trust Co., 3 Cir., 1944, 148 F.2d 709, 712. As to the additional security, see Evans v. Provident Trust Co., 319 Pa. 50 at page 52, 179 A. 452; Landberg v. Equitable Investment Co., 292 Pa. 476 at page 481, 141 A. 302.

lien. Weir v. Potter T. & M. G. Co., supra, 323 Pa. at page 223, 185 A. 630, and a parol forgiving of the debt accompanied by a delivery of the securities to the debtor-mortgagor would be sufficient. Id. 323 Pa. at page 219, 185 A. 630. So too payment, release or extinguishment of a bond or mortgage would discharge the other unless otherwise intended by the parties. See Kaylor v. Central Trust Co., 154 Pa. Super. 633 at page 637, 36 A.2d 825, and cases cited. The release of personal liability on the obligation secured by the mortgage does not per se extinguish the right to enforce the mortgage for the lien remains until the debt is paid. See Kimberly's Appeal, supra, 7 A. at page 79; Mollenauer v. Smith, 51 Pa.Super. 517; Devling Bros. Inc. v. Horn, 324 Pa. 481, 188 A. 347; 13 Pa.Standard Practice p. 601.

It is the debt which gives the lien its life. Weir v. Potter T. & M. G. Co., supra, 323 Pa. at page 221, 185 A. 630.

■ Here the intention of the parties is clear. There was good and valuable consideration. The contract was valid when made. The bank bound itself to look only to the property for payment of the balance due on the note. They could accomplish this by proceeding either on the mortgage or on the judgment on the bond. See 21 P.S. Pa. § 804; Cooper v. Lucas, 152 Pa.Super. 655 at page 658, 33 A.2d 466.

■ A court cannot make a decree based upon mere suspicion without competent proof. After a careful review and consideration of the entire record, the relevant legal authorities and the arguments of counsel, cf. Kaylor v. Central Trust Co., supra, 154 Pa.Super. at page 637, 36 A.2d 825, and see Fair & Square B. & L. Ass'n v. Presbyterian Board, 302 Pa. 162 at page 169, 170, 153 A. 341, we find no credible convincing evidence that the balance due as stated in the default judgment was not true and correct. There is no evidence of prior payment or of fraud or collusion to defeat collection of the tax lien.[17] In fact, the bank's claim being eliminated if any other property of the debtor be accumulated or otherwise discovered the government's lien would have greater efficacy.

■ Where a validly recorded prior mortgage followed by a validly recorded tax lien is foreclosed in a state court without making the government a party, the tax lien is not thereby extinguished; the purchaser takes title subject thereto. The tax lien is immune to state action. Once established against property of a taxpayer it may only be removed as federal laws permit. United States v. Kensington Shipyard & Drydock Corp., 3 Cir., 1948, 169 F. 2d 9 at page 12.[18] The mortgage lien no longer exists. Footnote 16, supra. The tax lien remains,[19] but subordinate and inferior to the bank's rights in the property. See Footnote 8, and Bank of America Nat'l Trust & Savings Ass'n v. United States, supra, 84 F.Supp. at page 388.

---

17. Nor is there any evidence to support the government's contention (see 56 P.S. Pa. § 272, subd. 5) that John Kehoe was only an endorser whose liability ceased upon the alleged release of the principal.

18. See Ralston v. Heiner, D.C.W.D.Pa. 1927, 21 F.2d 494, 495, affirmed, 3 Cir., 1928, 24 F.2d 416; State of Michigan v. United States, 317 U.S. 338, 63 S. Ct. 302, 87 L.Ed. 312, and cases cited; United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705; 9 Mertens Law of Fed. Income Taxation, § 54.42, pp. 607–608 and cases cited; contra, Trust Co. of Tex. v. United States, D.C. Tex.1933, 3 F.Supp. 683, based upon a Texas rule of law contrary to that of Pennsylvania, see Harper v. Consolidat-

ed Rubber Co., 284 Pa. 444 at page 451, 131 A. 356; Eldredge v. Eldredge, 128 Pa.Super. 284 at page 291, 194 A. 306.
  For an interesting analogy cf. Taylor v. Carryl, 20 How. 583, 61 U.S. 583, 15 L.Ed. 1028; Dungan's Appeal, 68 Pa. 204.

19. Ordinarily a lien continues until liability therefor is satisfied or becomes unenforcible by lapse of time. 26 U.S.C.A. § 3671; In re Victor Brewing Co., 3 Cir., 1944, 146 F.2d 831. Liens are property rights and may not be divested as a matter of procedure. In re Pennsylvania Central Brewing Co., 3 Cir., 1943, 135 F.2d 60 at page 63. The foregoing must however be read in context with the Act of 1931.

Monk is entitled to demand that the bank deliver a clear and marketable title. McDermott v. Reiter, 279 Pa. 545 at page 548, 124 A. 187; Taylor v. Allen, 60 Pa.Super. 503; Heppenstall v. Leng, 217 Pa. 49, 166 A. 991, 12 L.R.A.,N.S., 652.

Plaintiffs had the choice of two alternative procedures, i. e., that provided by the Revenue Code, 26 U.S.C.A § 3679, which is cumbersome and involved and at the present time rarely resorted to, and the more flexible and convenient method provided by the Act of 1931, as amended.[20]

We are confronted therefore with conflicting requests. The government, seeking to enforce its tax lien, demands that we order the property sold and distribute the proceeds. 26 U.S.C.A. §§ 3678, 3744, 3800, and the Act of 1931.[21] The plaintiffs, relying upon the Act of 1931, as amended, ask that there be no sale and that on the contrary we quiet title by a decree cancelling the tax lien.

It is clear that if a sale were ordered no fund would be provided in which the government would share.[22] Under similar circumstances, prior to the 1942 amendment to the Act of 1931,[23] the courts were in conflict as to the relief which might be afforded.[24]

20. See Clark Id. p. 32 et seq.; 9 Mertens Id. §§ 54.52, 54.53.

21. §§ 3744 and 3800 provide additional aid in enforcing the Internal Revenue laws; 3744 as to venue, 3800 granting district courts jurisdiction at the instance of the United States to make necessary and appropriate orders or decrees. Cf. §§ 3678, 3679, 28 U.S.C.A. §§ 901–906, as amended, 28 U.S.C.A. § 2410(a–d). § 3678 applies where it is necessary to sell property to satisfy unpaid taxes. If a claim of the United States is established therein the court *may* order a sale. (Until June 22, 1936, c. 690, § 802(a), 49 Stat. 1743, the statute read, "shall decree a sale".)

§ 3679 may be used where a person has a recorded lien or interest prior to that of the United States, or purchases the property at a sale to satisfy the prior lien or interest. In a civil action to determine such claim or lien the court is directed to adjudicate the matter in the same manner as under § 3678.

Under the 1931 Act, the United States consents to be named a party in actions to quiet title as well as to foreclose a mortgage or lien upon property in which it claims a lien. Here the government has the only remaining lien. Defendant is authorized to bid at the sale on its first lien but only to the extent of the government's indebtedness plus expenses of sale. The right to redeem is spelled out in the statute to cover situations only where the sale is made to satisfy a lien prior to that of the United States. See 28 U.S.C.A. (1940 ed.) § 904, now 28 U.S.C.A. § 2410(c).

If the government's lien were other than a tax lien the Comptroller General could release the property from the government lien.

22. Sherwood v. United States, D.C.N.Y. 1925, 5 F.2d 991; Fox v. Queens County Sales Co. Inc., supra, 52 F.2d at page 795; Ormsbee v. United States, D.C. Fla.1928, 23 F.2d 926; Mertens Id. § 54.54.

23. Act of Dec. 2, 1942, 50 Stat. 1026, 28 U.S.C. (1940 ed.) § 901, now 28 U.S. C.A. § 2410(a).

24. One view: By the terms of the statute which must be strictly construed, the court could grant no relief except to order a sale. Metropolitan Life Ins. Co. v. United States, 6 Cir., 1939, 107 F. 2d 311 at 314, certiorari denied 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400 (§ 3207, as amended, see historical note 26 U.S. C.A. § 3678) criticized in 53 Harv.L. Rev. 888, 49 Yale L.J. 1106; Integrity Trust Co. v. United States, D.C.N.J. 1933, 3 F.Supp. 577 (Act of 1931); followed in Borough of Kenilworth v. Corwine, D.C.N.J.1951, 96 F.Supp. 68; Sherwood v. United States, supra, 5 F. 2d at page 993 (§ 3207, supra); Fox v. Queens County Sales Co. Inc., supra, 52 F.2d at page 795 (§ 3207, supra); Ormsbee v. United States, D.C.Fla.1928, 23 F.2d 926 (§ 3207, supra); Ford Bros. & Co. v. Eddington Distilling Co., D.C. M.D.Pa.1939, 30 F.Supp. 213 (dicta as to the Act of 1931 prior to the 1942 amendment).

The other view: When it is obvious that the value of the property is insufficient to satisfy even a private lienor the court may order cancellation of the tax lien without first ordering the property to be sold. A court is not required to do a vain and useless thing. Oden v. United States, D.C.La.1929, 33 F.2d 553; cf. Trust Co. of Tex. v. United States, D.C.1933, 3 F.Supp. 683, supra (§ 3207 supra); Minn. Mutual Life Ins. Co. v.

572

Confronted by this diversity of opinion [25] Congress passed the 1942 amendment to include actions to quiet title in addition to those for foreclosure of mortgages and other liens. This in effect extended the scope of relief which could be granted in actions brought under the Act.[26] As to the plaintiffs' right to maintain such an action and the requirement that a plaintiff be in possession, see Heppenstall v. Leng, 217 Pa. 491, 66 A. 991, 12 L.R.A.,N.S., 652, a case closely analogous on its facts.[27] As to the jurisdiction of the court and the measure of relief which might be granted in such actions, see 44 Am.Jur. Id. § 32, p. 25. A party may have his title cleared and quieted by a decree cancelling and avoiding the offending instrument and prohibiting the claim of any right thereunder; and see

Humble Oil & Refining Co. v. Sun Oil Co., supra, 5 Cir., 191 F.2d at page 719.

True, § 3678(c) provides that when a claim or interest of the United States is established the court may order a sale and the Act of 1931 provides, "Where a sale of real estate is made to satisfy a lien *prior* to that of the United States, the United States shall have one year from the date of sale within which to redeem." 28 U.S.C.A. (1940 ed.) § 904, now 28 U.S.C. A. § 2410(c). Here the mortgage lien being extinguished, if any sale were held it would be to foreclose the tax lien. In view of the foregoing, we see no good reason why this court, as a court of equity, should not exercise its power by finally establishing the legal relations of the parties to the property in question, although this is the first case, so far as our research

United States, D.C.Tex.1931, 47 F.2d 942 (§ 3207, supra, as amended). See 9 Mertens Id. § 54.42 at p. 608; note 105 A.L.R. 1261.

25. The cases presented the need for an amendment by describing the government's lien as a cloud on title. Sherwood v. United States, supra, 5 F.2d at page 993; Minnesota Mut. Life Ins. Co. v. United States, supra, 47 F.2d at page 943; dissenting opinion Metropolitan Life Ins. Co. v. United States, 6 Cir., 107 F.2d at 316.

"An apparent cloud". Oden v. United States, 33 F.2d at page 553, supra. See Clark, Id. at p. 32. "The government's tax lien is * * * a cloud on title; accordingly, it is essential that other claimants * * * should be afforded a method for removal of the tax lien." And see notes in 53 Harv.L.Rev. 888, 49 Yale L.J. 1106. In Seals v. United States, D.C.La.1938, 24 F.Supp. 896, the court quieted title without the aid of the amendment.

As to what constitutes a cloud upon title, Octoraro Water Co. v. Garrison, 271 Pa. 421 at page 427, 114 A. 638, 640, defines it inter alia as "a cloud * * * which it would be inequitable to enforce", and see Barnes v. Boyd, D. C., 8 F.Supp. 584 at page 597, affirmed, 4 Cir., 73 F.2d 910, certiorari denied 294 U.S. 723, 55 S.Ct. 550, 79 L.Ed. 1254.

"A lien which has been * * * nullified by foreclosure of another lien." See Note 8 A.L.R. 150. "A claim

* * * (which) would embarrass alienation of a property". Humble Oil & Refining Co. v. Sun Oil Co., 5 Cir., 1951, 191 F.2d 705 at page 719, and see Phelps v. Harris, 101 U.S. 370 at 374, 25 L. Ed. 855; Gardner v. Buckeye Savings & Loan Co., 108 W.Va. 673, 152 S.E.2d 530, 78 A.L.R. p. 5, 6; 74 C.J.S., Quieting Title, § 1, p. 11; cf. Id., § 14, p. 35. As to the distinction between an action to quiet title and to remove a cloud, see Black's Law Dictionary, 3d Ed., p. 44; 44 Am.Jur., Quieting Title, p. 5; 74 C. J.S., Quieting Title, § 2.

26. See Clark Id. p. 35; 9 Mertens Id. p. 629, and see and cf. Naus v. Brodrick, D.C.Kan.1951, 103 F.Supp. 233; Jones v. Tower Production Co., 10 Cir., 1941, 120 F.2d 779 at page 782.

27. And see Hutchinson v. Dennis, 217 Pa. 290, 66 A. 524; Humble Oil & Refining Co. v. Sun Oil Co., supra, 5 Cir., 191 F. 2d at pages 710, 712, 718; United States v. State of Oregon, 295 U.S. 1 at page 24, 55 S.Ct. 610, 79 L.Ed. 1267; Gregory v. Keenan, D.C., 256 F. 949, 962; Lancaster v. Kathleen Oil Co., 241 U. S. 551 at page 555, 36 S.Ct. 711, 60 L. Ed. 1161. See as to analogous situations, Barnes v. Boyd, supra, D.C., 8 F. Supp. at page 597; 44 Am.Jur. Id. supra, § 54, pp. 41, 42; 74 C.J.S., Quieting Title, § 32, pp. 57–59; Seals v. United States, supra, D.C., 24 F.Supp. at page 899. Generally as to remedy, see Michalski v. Kruszewski, 330 Pa. 62, 63, 64, 198 A. 673.

has revealed, to grant such relief since the 1942 amendment. Cf. Bank of America Nat'l Trust & Saving Ass'n v. United States, supra. Such a conclusion is not only supported by the foregoing but rests upon sound principles of remedial justice.

A decree consistent herewith may be submitted ordering the cancellation of the government's lien as to the property in question and directing that the records of the state court be marked accordingly.